THE STATE OF FLORIDA, *ex rel.,* RAILROAD COMMISSIONERS. *Relators,* v. LOUISVILLE & NASHVILLE RAILROAD COMPANY, *Respondent.*

Opinion Filed February 23, 1915.

1.  Rules 3, 15, and 17 of the "Rules Governing the Transportation of Freight," promulgated by the State Railroad Commission do not contemplate that a railroad common carrier, having switching and terminal facilities for its own use, at a particular point, shall *be forced* at least without adequate

necessity, compensation and protection, to collect and distribute within its own terminal and switching limits for a competing line, carloads of freight destined to or arriving from points reached by its line, such carrier having no part of the line haul or compensation.

2. Where the rules of the railroad commission as validly construed, do not require the service commanded by an alternative writ of mandamus, and such service cannot lawfully be enforced, the alternative writ will be quashed on appropriate motion.

This is a case of original jurisdiction in Mandamus.

Motion to quash granted.

*F. M. Hudson,* for Relators;

*Blount* & *Blount* & *Carter,* for Respondent.

WHITFIELD, J.—The alternative writ of mandamus issued by this court herein commands the respondent railroad company to observe and obey Rules 3, 15 and 17 of the rules governing the transportation of freight promulgated by the State Railroad Commission in this: that the respondent (1) shall withdraw from its tariff "regulations governing terminal arrangements at Pensacola, Florida, all rules and provisions which eliminate, prevent or prohibit the switching by the said company of traffic offered by connecting lines, or for delivery to connecting lines at Pensacola, Florida, originating at or delivered to points on or via the Louisville & Nashville Railroad;" (2) "shall, on demand, place cars at warehouses or on sidetracks or other points on its line (at Pensacola) to be loaded for shipment via connecting lines (at Pensacola) to points reached by the Louisville & Nashville

Railroad;" and (3) "shall transport, switch and transfer carload shipments and other traffic offered by connecting lines at Pensacola, Florida, or offered for delivery to connecting lines at Pensacola, Florida, which originate at or are destined to points on or via the Louisville & Nashville Railroad; and that the Louisville & Nashville Railroad Company shall receive any such cars from any connecting railroad for such purposes, and in all respects fully to comply with, observe and obey the said" Rules 3, 15 and 17 of the "Rules Governing the Transportation of Freight;" or that respondent shall on a day fixed show cause for not obeying the writ.

The respondent moved to quash the alternative writ, which motion is in effect a demurrer, on numerous specific grounds which in effect are that the writ is vague, indefinite, uncertain and insufficient; that the rules and the writ requires respondent to do more than the law requires, and more than the Railroad Commission has the power to require, and are therefore invalid as to the command; that the requirement sought to be enforced unlawfully burdens interstate commerce and violates the respondent's property rights that are secured by the State and Federal Constitutions.

Rules 3, 15 and 17 referred to are as follows:

"3. No common carrier shall decline or refuse to act as such to transport any article proper for transportation, and a failure to transport such article within a reasonable time after the same has been offered for transportation shall be deemed a violation of this rule. The term common carrier is used in this rule in the sense defined in the statutes of the State of Florida relating to the Railroad Commissioners, and this rule is to be con-

strued as applying to common carriers under the jurisdiction of the Railroad Commissioners."

"I5. A charge of not more than two dollars per car, without regard to its weight or contents, will be allowed, except to the railroad having the line haul of the same, for transporting, switching or transferring a loaded car from any point on any railroad to a connecting railroad or to any warehouse, sidetrack or other point within the switching limits of the place; and no railroad shall decline or refuse to transport, switch or transfer any such car or to receive it from any connecting railroad for such purposes. The switching limits of any place, within the meaning of this rule, shall be the switching limits usually operated there, but in no case less than three miles. No railroad shall reduce any of its switching limits without first obtaining the approval of the Railroad Commissioners.

.When in the transfer, switching or transportation of a car between such points, it is necessary to pass over the track or tracks of any intermediate railroad or railroads, said maximum charge of two dollars shall be equitably divided between the railroads at interest, excluding that having the line haul.

When a charge is made for the transfer, switching or transportation of a loaded car between such points, no additional charge shall be made for the accompanying movement of the empty car in the opposite direction. No charge whatever shall be made by a railroad having the line haul for placing, for loading, an empty car at any warehouse or other point on its own line or sidetrack, or for switching the loaded car to or from the same either for delivery or for transportation.

Provided that this rule shall not interfere with any prevailing legal rate for the transportation of freight between different stations; and shall ‸not apply to any freight that does not pay a direct freight transportation charge in connection with a switching charge."

"17.   The right of a shipper to direct by what line or lines of railroad in this State his shipments shall be transported within the State of Florida shall be observed by all railroads in this State."

Rule 15 relates to compensation for switching loaded cars, and provides that the carrier shall not "decline or refuse to transport, switch or transfer any such car, or to receive it from any connecting railroad for such purposes." Rule 3 announces the duty of the common carrier "to transport any atricle for transportation;" and Rule 17 prescribes "the right of a shipper to direct by what line or lines of railroad   *   *   *   his shipments shall be transported within the State of Florida." The service commanded is to be rendered "at Pensacola, Florida."

The provision of Rule 17 as to the right of a shipper to direct by what line his shipments shall be transported, apparently relates to *transportation* or a *line haul* and not to terminal or switching movements; and Rule 15 expressly provides that it "shall not apply to any freight that does not pay a direct freight transportation charge in connection with a switching charge." This latter provision has reference to roads having a part of the transportation, or line haul, since the Rule also expressly provides that "No charge whatever shall be made by a railroad having the line haul for placing, for loading an empty car at any warehouse or other point on its own line or

side-track, or for switching the loaded car to or from the same either for delivery or transportation." These rules do not contemplate that a carrier, having switching and terminal facilities for its own use, at a particular point, shall *be forced* at least without adequate necessity, compensation and protection, to collect and to distribute within its own terminal and switching limits for a competing line, carloads of freight destined to or arriving from points reached by its line, such carrier having no part of the line haul or compensation. Such a requirement would, for the purpose of originating and delivering at a point reached by competing lines, in effect give to a carrier for a mere switching charge the use for its own purposes of its competitor's terminal facilities, equipment and motive power, thereby amounting to a taking of property in violation of organic rights, within the principle announced in Louisville & N. R. Co. v. Central Stock Yards Co., 212 U. S. 132, 29 Sup. Ct. Rep. 246, and Central Stock Yards Co. v. Louisville & N. R. Co., 192 U. S. 568, 24 Sup. Ct. Rep. 339. This principle has not been departed from by the Federal Supreme Court, the final arbiter herein.

In Grand Trunk R. Co. v. Michigan Railroad Commission, 231 U. S. 457, ...... Sup. Ct. Rep. ......, the service was not a switching movement, but a *transportation* service in which there was *unlawful discrimination*, the points of origin and destination *both being* within a city, and at points reached by team tracks or other sidings upon the carrier's roads. In this case the City of Pensacola is only one of the terminal of the freight included in the service here required between points reached by the respondent carrier and its competitors, the respondent only having the terminal and switching facilities, and will

get no part of the charge for the transportation or line haul, but only switching charges.

This case is essentially different from Chicago, Milwaukee and St. Paul Railway Co. v. State of Iowa, 233 U. S. 334, — Sup. Ct. Rep......, where the order sought to be enforced merely required the continuance of a former practice by receiving cars already loaded and in suitable condition when tendered by a connecting carrier, not for delivery by switching, but for further re-shipment to other parts of the State.

In Pennsylvania Co. v. United States, 214 Fed. Rep. 445, the order related to an *arbitrary* and *unlawful discrimination* in service being rendered by receiving cars "at a place where the Common Carrier has established a point of interchange." In Thompson v. Missouri K. & T. Ry. Co., 103 Texas, 372, 126 S. W. Rep. 257, the service was a transportation line haul, a portion of which the initial carrier had to the connecting point, away from the initial point. In Public Service Commission of Maryland v. Northern Cent. Ry. Co. ......, Md. ......, 90 Atl. Rep. 105, the service was not a terminal delivery, but "further transportation" and for "reasonable compensation" to be provided. In Chicago I. & L. Ry. Co. v. Railroad Commission of Indiana, 175 Ind. 630, 95 N. E. Rep. 364, the "carrier is not required to do switching service if it is able and willing to transport the freight, with reasonable dispatch, at the same rate as that of the competitor" and "for switching service the carrier is authorized to impose and collect a 'reasonable transportation charge,' and this would include more than the labor cost in moving the car, and might include also the element of a return on the capital invested in terminal facilities."

As a valid construction should be given to the rules, and as when validly construed Rules 3, 15 and 17 do not require the service here sought to be enforced, the motion to quash the alternative writ is granted.

TAYLOR, C. J., AND SHACKLEFORD, COCKRELL AND ELLIS, JJ., concur.